**GARRETT et al. v. COMMISSIONERS' COURT OF LIMESTONE COUNTY et al.    (No. 8610.)***

(Court of Civil Appeals of Texas. Dallas. April 9, 1921. Rehearing Denied May 7, 1921.)

1. **Constitutional law ⬥48—Statutes declared unconstitutional only where there exists a clear conflict.**

The Legislature in enacting laws is presumed to regard the limitations imposed by the Constitution as assiduously as courts regard them in construing and applying laws, and it is properly the function of courts to seek out how by reasonable construction to uphold and enforce the legislative will as being consistent with the Constitution rather than to review and nullify it.

2. **Statutes ⬥100(1)—"Members of board of road commissioners not officers" within constitutional provision relating to special legislation; "office"; "employment."**

The duties of an office as distinguished from an employment are continuing and permanent rather than temporary and transitory, and hence members of the board of permanent road commissioners for road district No. 15 of Limestone county constituted, under Sp. Laws 36th Leg. (1919) c. 74, are not officers within the meaning of Const. art. 3, § 56, and article 16, § 30, relating to the creation of offices by special legislation and tenure of office.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Employment; Office; Officer.]

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted June 15, 1921.

**3. Officers ⊂⊃100(1)—Statutes ⊂⊃100(1)—Special law authorized imposing additional duties on officers of same department and providing extra compensation.**

The Legislature may impose additional duties on public officers so long as the added duties are distinctly embraced within the same department of government to which the original ones belong, and has the right to provide extra remuneration for the extra services to be rendered by the ex officio members, and hence had authority to do so in Sp. Laws 36th Leg. (1919) c. 74, wherein it made county judge, county auditor, four commissioners, and three citizens members of a board of road commissioners.

**4. Statutes ⊂⊃8½(1)—Local laws may be passed for both the construction and maintenance of roads.**

Under Const. art. 11, § 2, and article 8, § 9, the Legislature may pass local laws for construction as well as maintenance of public roads and highways already built without the local notice required for special or local laws, in view of article 3, §§ 52, 56.

**5. Constitutional law ⊂⊃12—Particular provision to be construed as exception to general provision.**

When one section of the Constitution expresses a general intention to do a particular thing and another section expresses a particular intention incompatible with the general intention, the particular intention is to be considered in the nature of an exception.

**6. Constitutional law ⊂⊃14—Where meaning is plain, courts should not attempt to construe.**

Where the meaning of a constitutional provision is plain, courts should not attempt to construe it, but should allow its clear meaning to apply.

**7. Statutes ⊂⊃100(1)—Constitutional provision relating to creating offices by special or local law held not to apply to members of board of commissioners of road district.**

Inhibition of Const. art. 3, § 56, against creating offices or prescribing the powers or duties of officers in counties, cities, towns, election or school districts by special or local law, relates only to offices and officers for counties, cities, towns, election or school districts, and does not apply to members of a board of commissioners of a road district such as Limestone county road district No. 15, established under Sp. Laws 36th Leg. (1919) c. 74, which creates a board of road commissioners composed of county judge, county auditor, commissioners, and three citizens to be selected from each commissioner's precinct, but assuming that such section 56 does apply, section 52 at least by necessary implication excepts such officers, and in connection with article 8, § 9, authorizes the Legislature by special or local law to create them and prescribe their powers and duties as incidental provisions for the issuance of bonds to construct macadamized roads.

**8. Officers ⊂⊃49—Law providing for commissioners of road district held not to violate constitutional provision concerning duration of office.**

Assuming that citizen members of the permanent board of road commissioners of Limestone county road district No. 15, established and organized under Sp. Laws 36th Leg. (1919) c. 74, are officers, it cannot be said that the latter act violates Const. art. 16, § 30, in that the tenure of office is to be until the work is completed, since such constitutional provision can be read into the act so as to make it read, "And shall continue to serve not exceeding two years as members of said board," etc.

**9. Highways ⊂⊃91—Statutes ⊂⊃94(2)—Special road law held not an unwarranted attempt to control affairs of county by special law.**

Sp. Laws 36th Leg. (1919) c. 74, providing for establishment of road districts and creation of a board of permanent road commissioners composed of certain county officers and citizens selected from each commissioner's district for the carrying on of the work, is not unconstitutional as an unwarranted attempt by the Legislature to control the affairs of Limestone county by special law or to take from the commissioners' court powers conferred upon that body alone in violation of Const. art. 5, § 18, in view of article 3, § 52, and article 8, § 9.

**10. Counties ⊂⊃39—Legislature held to have power to commit county business to other agency than commissioners' court.**

Const. art. 5, § 18, providing that the commissioners' court shall exercise such power and jurisdiction over all county business as is conferred by the Constitution and laws of the state, does not preclude the Legislature from committing any county business to some other agency, nor does any other provision of the Constitution prohibit the exercise of such legislative power.

**11. Statutes ⊂⊃163—General laws give way to later special laws.**

The fact that a special enactment conflicts with general laws already existing when it was enacted does not affect its validity, as the repugnant portions of the general laws give way to those of the special law, and its provisions will be given the same scope and effect as they would have without the existence of a general law having contrary application.

Appeal from District Court, Limestone County; Hawkins Scarborough, Judge.

Suit by Claud Garrett and others against the Commissioners' Court of Limestone County and others. Judgment for defendants, and plaintiffs appeal. Reversed and remanded.

A. B. Rennolds, of Mexia, and Richard Mays, of Corsicana, for appellants.

C. S. & J. E. Bradley, of Groesbeck, for appellees.

HAMILTON, J. This is a suit for injunction brought by appellants (board of perma-

nent road commissioners for road district No. 15 of Limestone county, Tex., and two citizens of the road district) against appellees, the commissioners' court of said county and others. The road district came into existence under authority of an enactment by the Legislature of a special road law for Limestone county creating a special road system for that county, and the law became effective on March 15, 1919. This law expressly adopted the provisions of chapter 2, tit. 18, of the General Laws of Texas relating to the issuance of bonds for the construction and maintenance of public roads, and those provisions of general law were made a part of the special enactment before us to be considered. Chapter 74, Special Laws 36th Leg., and articles 627 to 641, Rev. Civ. Stats. The general law, as it existed when the above-named special road law was enacted, specifically authorized the incorporation of its provisions into the special road law of any county. Article 641, Rev. Civ. Stats.

The Limestone county road law contains provisions among which are the following:

"Sec. 4. In the event an election is held and bonds voted for the entire county, a board of permanent road commissioners shall be composed of the county judge, county auditor, and the four commissioners, and in addition thereto, three citizens to be selected from each commissioner's precinct. The persons to be chosen members of the board shall be men of wide business experience and good sound judgment. They shall be nominated by a majority vote of the property taxpaying, resident qualified voters, voting at such election at the same time and place as the vote is taken on the bond issue, and in the event such election is hereafter held and bonds voted for any political subdivision or defined district of said county, the manner of nominating and electing citizen members of the board for such political subdivision of defined district shall be the same as that providing for the election of citizen members for county board of permanent road commissioners, provided that no political subdivision or defined district shall have more than three citizen members on said board.

"Sec. 5. And in the event any political subdivision or defined district of said county has voted for the issuance of bonds or an election has been ordered for the voting of the issuance of said bonds for the construction of permanent roads at the time of the passage of this act, there shall be created for such political subdivision or defined district a body to be known as the board of permanent road commissioners for * * * (naming political subdivision) and hereinafter referred to as the 'board' which shall be constituted and shall consist of the county judge and the county commissioner in whose precinct said subdivision or defined district may be, and three citizens of such subdivision or defined district; and in the event the same shall contain all or any part of two or more commissioners' precincts, then the commissioner of each such precinct shall be a member of said board, and the citizen members of such board shall be nominated by a majority vote of the resident property taxpaying voters of such political subdivision or defined district at a special election to be held therein for that purpose, said election to be on the petition of twenty or more resident property taxpaying voters of such political subdivision or defined district, said election to be ordered and held under the general election laws of this state at a time and place or places to be designated in the order of election and the persons whose names are so nominated shall, by the commissioners' court, be elected as the members of the board to which they are nominated, and said persons, together with all citizen members of boards created under' this act, shall qualify by taking oath of office required by law, and shall give bond, payable to the county judge or his successors in office, in trust for the permanent road fund for said county; or said political subdivision or defined district, in the amount and condition as now prescribed by law for county commissioners when acting as road supervisors, and shall continue to serve as members of said board until the roads provided for under such bond elections are completed. In case of any vacancy arising in the citizen's membership of such board, such vacancy shall be filled by a majority vote of the remaining members of the board. * * *

"Sec. 9. Said board shall adopt its own order of business, and shall fix times and manner of holding its regular or special meetings. Said board shall have the entire and exclusive charge, control and management of all matters pertaining or relating to the laying out and constructing of the permanent roads of the county, or such political subdivision or defined district, for which the bond issue was voted. The words 'road' or 'roads' as used herein, shall be taken to include and embrace all rights of way, roadbeds, ditches, drains, culverts, bridges, and other accessories pertaining to or in any way comprising any part of said roads or highways being constructed under the provisions of this act.

"Sec. 10. All laws and parts of laws in conflict herewith are hereby repealed."

An election was held in road district No. 15, a defined district of Limestone county, under the provisions of this law resulting in favor of the issuance of bonds to the extent of $300,000. And, pursuant to the terms of section 7 of the law, three citizens of the district were nominated and then by the commissioners' court selected as members of the board. All members of the board having qualified in compliance with the law and having assumed to act, a controversy arose as to the building of the Exall Highway through the town of Groesbeck, a town having more than 1,000 inhabitants and less than 5,000 inhabitants incorporated under the general laws of Texas, and situated within road district No. 15. The three citizen members of the road board and the county judge favored constructing the road along certain streets designated as the "west line," whereas all members of the commissioners' court and the members of the Groesbeck city commission opposed this route and

favored constructing the road upon certain other streets designated as the "east line." This contention eventuated in the commissioners' court taking over all authority to expend the proceeds of the bond issue and construct the roads in the district, after the board had already been discharging the duties and exercising the authority for which the special road law provides.

The injunction was sought by appellants upon the theory that the district road board was a legally existing body clothed with exclusive authority to lay out and construct roads in the district and control its affairs and that appellees were unlawfully interfering and usurping its functions and powers; and the injunction was denied by the trial court upon the theory that all parts of the Limestone county special road law creating the road board and reposing in it exclusive control and management "of all matters pertaining or relating to the laying out and construction" of permanent roads in the defined district were unconstitutional and void.

The conclusions of the trial court upon which the judgment appealed from is predicated may be substantially stated as follows: First, that the positions held by the members of the board are offices and the members themselves officers within the meaning of the Constitution of Texas, and that the creation of such offices and the prescribing of the duties and powers of such officers by the special legislative enactment violated section 56 of article 3 of the state Constitution. Second, that sections 5 and 9, of the special road law (above copied), and other parts of the law, constitute a legislative attempt to control the affairs of Limestone county by special law, taking away from the commissioners' court the power conferred by section 18 of article 5 of the Texas Constitution, and by general statutes, and bestowing that power upon the road board. Third, that the power to locate, change, control, and supervise roads having been conferred upon the commissioners' court by section 18 of article 5 of the Constitution and by general statutory law, the creation of the district board by special law and clothing it with the powers and duties therein prescribed is void and in contravention of section 56 of article 3 and section 18 of article 5 of the Constitution. Fourth, that the law fixes no definite tenure for the members of the board and that their tenure may be any period of time until the work is completed, which may be less than two years or more than two years, rendering the law in conflict with section 30 of article 16 of the Constitution.

[1] The power possessed by courts to declare acts of the Legislature unconstitutional is a delicate one, and ought never to be used to that end except where there is necessarily found to exist a clear and irreconcilable conflict between the law attacked and the Constitution. The Legislature in enacting laws is presumed to regard the limitations imposed by the Constitution as assiduously as courts regard them in construing and applying laws; and it is properly the function of courts to seek out how by reasonable construction to uphold and enforce the legislative will as being consistent with the Constitution rather than to review and nullify it. "This delicate duty of the judicial department has led to the rule, now well established, that the court usurps legislative functions when it presumes to adjudge a law void where the repugnancy between the law and constitution is not established beyond reasonable doubt. Its duty to refrain from legislative functions is paramount to its duty to declare the law void, because its jurisdiction to decide at all must be established before it undertakes to pronounce a decision." Tucker on Constitution, 376.

The appeal is to be disposed of altogether upon the question of the validity of the road law, and we approach a consideration of that question in the attitude reflected by the preceding remarks. A treatment of all appellant's essential propositions may be embraced in a discussion of the trial court's holdings, and we will accordingly discuss the latter.

[2] We believe the language used in the act creating the board and prescribing its duties and powers reveals a deliberate legislative intent to provide for practical supervision of the expenditures of the funds and construction of the roads by a medium the most direct and nearest to the people, who by electorate created the district and placed on themselves the burden of payment without at the same time creating offices in the constitutional sense. The law seems to reflect an effort to bestow the fullest measure of local control in relation to a very practical matter and in connection therewith to avoid conflict with constitutional restrictions as to offices and officers. The purpose of the Legislature appears to have been to create administrative positions analogous to offices rather than offices. The duties of an office as distinguished from an employment are continuing and permanent, rather than temporary and transitory, as are those of the road board. Lewis v. Jersey City, 51 N. J. Law, 240, 17 Atl. 112; Underwood v. McDuffee, 15 Mich. 361, 93 Am. Dec. 194. It has been held that commissioners appointed by a city board of aldermen to lay out a highway, under the general laws of the state providing that for due marking out of any highway the town council shall appoint three suitable and disinterested men, are not officers, but merely statutory agents of the appointing body. Attorney General v. McCaughey, 21 R. I. 341, 43 Atl. 646.

However, regardless of the legislative intent, as manifested by the language of the law, we agree that the effect of creating the board and lodging in it authority and dis-

cretion renders it difficult to maintain the view that it did not create offices and that the members of the board are not officers. The authority and discretion reposed in them, and the measurements of their responsibilities by official oath and bond, are such as to make difficult and doubtful an effort to set them apart from those who are included in the general definition of officers. Kimbrough v. Barnett, 93 Tex. 301, 55 S. W. 120. "A position is a public office when it is created by law, with duties cast on the incumbent which involve an exercise of some portion of sovereign power and in the performance of which the public is concerned, and which also are continuing in their nature and not occasional or intermittent; while a public employment, on the other hand, is a position which lacks one or more of the foregoing elements." Ann. Cas. 1917D, 319.

[3] "The term 'office' implies a delegation of a portion of the sovereign power to, and possession of, it by the person filling the office; a public office being an agency for the state, and the person whose duty it is to perform the agency being a public officer. The term embraces the idea of tenure, duration, emolument and duties, and has respect to a permanent public trust to be exercised in behalf of government, and not to a merely transient, occasional or incidental employment. A person in the service of the government who derives his position from a duly and legally authorized election or appointment, whose duties are continuous in their nature and defined by rules prescribed by government, and not by contract, consisting of the exercise of important public powers, trusts, or duties, as a part of the regular administration of government, the place and the duties remaining, though the incumbent dies or is changed, every office in the constitutional meaning of the term implying an authority to exercise some portion of the sovereign power, either in making, executing or administering the laws." Mechem on Public Officers, §§ 1–9. We are inclined to the view that the law in creating the road board and prescribing the powers and duties of its members did not create offices and render the members of the board officers, within the classes the creation of which is prohibited by article 3, § 56, of the state Constitution; but that the Legislature was within all constitutional inhibitions, expressly stated or existing by fair implication, in creating the body and providing its duties in connection with the project of constructing roads for the providing of which project the Constitution has expressly granted legislative authority. That the law added special duties to those already imposed upon the ex officio members of the board clearly does not bring it into conflict with constitutional restraint. There is nothing in the Constitution to prohibit the Legislature from imposing such additional duties so long as the added duties are dis-

tinctly embraced within the same department of government to which the original ones belong. The restriction is that authority of officers of one department of government cannot be conferred upon those of one of the other departments. The Legislature also had the right to provide extra remuneration for the extra service to be rendered by the ex officio members. City of Houston v. Stewart, 99 Tex. 67, 87 S. W. 665. The requirement that citizens of the road district should participate with county officers in constructing the roads and expending the money, it seems to us, merely devises an agency of local supervision and reassurance to those whose interests are paramount in the roads themselves and in the funds they are to pay for their construction. The citizens of the road district have a very distinct interest in the construction of the roads. This law authorizes them to make their own selection of an agency of control or part control of the building of the roads, which is for the indeterminate period of construction, and the places they fill cease to exist when the work is finished. Their duties are public only because they are incidental to the accomplishment of a particular and special public undertaking, directly and paramountly of concern to those by whom they are named as trustees of such public enterprise. The duties and authority are temporary and without the element of continuity, ending when the work is done.

But conceding that the citizen members of the board are officers under the test of the constitutional sense of the term, and that it is erroneous to hold otherwise, we still do not think this would be a sufficient reason for holding the act to be in transcension of the Constitution. Section 56 of article 3 does provide, among other provisions not here material, that the Legislature shall not, "except as otherwise provided by this Constitution," pass any local or special law, regulating the affairs of counties, cities, towns, wards, or school districts; authorizing the laying out, opening, altering, or maintaining of roads, highways, streets, or alleys; creating offices or prescribing the powers and duties of officers, in counties, cities, towns, election or school districts.

[4] The law here involved is manifestly a local and special law. Smith v. Grayson County, 18 Tex. Civ. App. 153, 44 S. W. 923. Section 2, art. 11, of the Constitution, declares that laying out, constructing and repairing county roads shall be provided for by general law but it does not expressly prohibit the passage of local laws for the achievement of such purposes; while section 9 of article 8 explicitly provides that—

"The Legislature may pass local laws for the maintenance of the public roads and highways, without the local notice required for special or local laws."

This language is not to be restricted to mean that such local laws can be passed only for the maintenance of roads already built. It "had reference to maintaining a system of public roads and highways, which would include all the necessary powers to provide and keep up a system of highways." Smith v. Grayson County, 18 Tex. Civ. App. 157, 44 S. W. 923; Brown v. Graham, 58 Tex. 254.

Section 52 of article 3, Constitution of Texas, we regard as conferring a particular grant of power upon the Legislature, which, under a fair and reasonable construction in connection with all other relevant provisions of the Constitution, may be held to authorize all provisions of this enactment. Said section 52 is as follows:

"The Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the ·state, to lend its credit or to grant public money or thing of value in aid of, or to, any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company; provided, however, that under legislative provision any county, any political subdivision of a county, any number of adjoining counties, or any political subdivision of the state, or *any defined district* [italics ours] now or hereafter to be described and defined within the state of Texas, and which may or may not include towns, villages or municipal corporations, upon a vote of a two-thirds majority of the resident property taxpayers voting thereon who are qualified electors of such district or territory to be affected thereby, in addition to all other debts, may issue bonds or otherwise lend its credit in any amount not to exceed one-fourth of the assessed valuation of the real property of such district or territory, except that the total bonded indebtedness of any city or town shall never exceed the limits imposed by other provisions of this Constitution, and levy and collect such taxes to pay the interest thereon and provide a sinking fund for the redemption thereof, as the Legislature may authorize, and in such manner as it may authorize the same, for the following purposes, to wit: (a) The improvement of rivers, creeks and streams to prevent overflows, and to permit of navigation thereof, or irrigation thereof, or in aid of such purposes. (b) The construction and maintenance of pools, lakes, reservoirs, dams, canals and waterways for the purposes of irrigation, drainage or navigation, or in aid thereof. (c) The construction, maintenance and *operation* of macadamized, graveled or paved roads and turnpikes, or in aid thereof."

[5] Section 56, art. 3, and section 2, art. 11, of the Constitution, contain general provisions. They apply only to the subjects they embrace, and not to those specially excepted from their operation by section 52, art. 3, and section 9, art. 8, the two latter sections being amendments embracing specific authority for the enactment of the law which created the road district and prescribed the agencies by which its affairs should be managed. These last-named provisions were placed in the Constitution in 1904 and 1907, respectively, while the other two were provisions of the Constitution as it was originally adopted in 1876. Although section 56, art. 3, and section 2, art. 11, relate to particular subjects, they express a general intention, while the above-named amendatory sections express a particular intention incompatible with the expressions of section 56, art. 3, and section 2, art. 11, relating to the same matter. "When one section of the Constitution expresses a general intention to do a particular thing, and another section expresses a particular intention incompatible with the general intention, the particular intention is to be considered in the nature of an exception." Smith v. Grayson County, supra.

Road district No. 15 of Limestone county is a defined district within the state of Texas, which has issued bonds and thereby loaned its credit under legislative provision, as specifically permitted by section 52, art. 3, of the Constitution, for the construction, etc., of macadamized, graveled or paved roads. An element of that legislative provision is that the roads to be built with the proceeds of the bonds should be constructed under the supervision of the road board provided for by the enactment. The legislative provision under which this defined district lent its credit and incumbered itself with bonded indebtedness was that the funds should be administered and the roads built under this agency which it created, and under no other. We believe that the creating of the board and clothing it with the authority and duties given it entirely conform to the specific provisions of section 52, art. 3, which apply and control to the exclusion of all other constitutional provisions inconsistent therewith. We think that the people in adopting the amendment declaring that a defined district (among other subdivisions of the state) might issue bonds or otherwise lend its credit for the construction, etc., of roads "under legislative provision" intended such legislative provision (if the Legislature might choose to make it) as the setting up an agency within the defined district itself to direct the expending of the money and the construction of the roads for which the money was made available by and in the district. And this is true whether or not the citizen members of the board are officers. Section 52, art. 3, authorizes the Legislature to provide for the road board, as an instrumentality to expend the bond money and supervise the construction of the roads, and section 9, art. 8, expressly authorizes it to be done by special or local law. The county judge, the county auditor, and the county commissioner are not given a new office by the law. They are merely ex officio members of the board. Their duties, consistent with those they already have, are merely enlarged. City of Houston v. Stewart, supra.

The only question, therefore, that could

arise on this feature, is whether or not, conceding the citizen members of the board to be officers, does the fact that they are such officers invalidate those portions of the law making them members of the board and prescribing their authority and duties?

[6, 7] Where the meaning of a constitutional provision is plain, courts should not attempt to construe it, but should allow its clear meaning to apply. However, we think that the inhibition of section 56, art. 3, against creating offices, or prescribing the powers and duties of officers in counties, cities, towns, election or school districts by special or local law, may be fairly and reasonably construed to relate only to offices and officers for counties, cities, towns, election or school districts. We have found no decision construing this particular provision, and at the time it was adopted there was no provision for any office or officer under the state within a county except offices and officers of or for counties, cities, towns, election or school districts as such, and those are the classes of offices and officers to which we believe this constitutional provision should be given sole application. The defined district comprised in Limestone county road district No. 15 is not any one of the subdivisions above enumerated, and the functions of the board members are not at all commensurate with those of an officer of any of them. But granting that section 56, art. 3, as it applies to offices and officers should be construed so as to apply to such functionaries as the members of the road board, in the absence of some other constitutional provision limiting its application so as to exclude them from its provisions, yet there is present in the Constitution, § 52, art. 3, which at least by necessary implication excepts such officers from the provisions of section 56 of the same article, and in connection with section 9, art. 8, authorizes the Legislature by special or local law to create them and prescribe their powers and duties as incidental provisions for the issuance of bonds to construct macadamized roads.

[8] Neither do we think, conceding the members of the road board to be officers, that the fact that the tenure of office may be until the work is completed, which may be less than two years or more than two years, renders the law unconstitutional because in conflict with section 30, art. 16, of the Constitution, providing that the duration of all offices not fixed by the Constitution shall never exceed two years. The meaning of this constitutional provision is clear and entirely without ambiguity. This being so, it is our duty, if possible, to construe the statute to conform to it.

"The duty of the court to uphold a statute where the conflict between it and the Constitution is not clear, and the implication which must always exist that no violation has been intended by the Legislature, may require it in some cases, where the meaning of the Constitution is not in doubt, to lean in favor of such construction of the statute as might not at first view seem most obvious and natural. For, as a conflict between the statute and the Constitution is not to be implied, it would seem to follow, where the meaning of the Constitution is clear, that the court, if possible, must give the statute such a construction as will enable it to have effect. This is only saying, in other words, that the court must construe the statute in accordance with the legislative intent; since it is always to be presumed the Legislature designed the statute to take effect, and not to be a nullity." Cooley on Constitutional Limitations, 255.

Bearing in mind the rule thus quoted, and perceiving that the tenure of office may cover a period not in excess of two years, although, under another construction, it may cover a period exceeding two years, we will give it the construction making it embrace a period not in excess of two years and will exclude that construction which would make it embrace a duration greater than that period, because the former construction conforms the act to the Constitution while the latter would be repugnant to the Constitution and invalidate the statute. In other words, we read the Constitution into section 7 of the statutes so as to make the statute read, "and shall continue to serve *not exceeding two years,* as members of said board until the roads provided for under such bond elections are completed." The italized words express the constitutional limitation, and to insert them does not vary the meaning the law still has if they are eliminated, except that they restrict the term of office and so modify it as to remove the uncertainty as to length of time which exists in their absence.

[9-11] The road law is in no respect an unwarranted attempt by the Legislature to control the affairs of Limestone county by special law or to take from the commissioners' court powers conferred upon that body alone, because the Constitution, as we have already indicated, authorizes a special law containing the provisions the Legislature enacted, since section 52, art. 3, and section 9, art. 8, so empower the Legislature. No provision of the Constitution reposes exclusive power over county affairs in the commissioners' court. Section 18, art. 5, provides that it shall "exercise such powers and jurisdiction over all county business, as is conferred by the Constitution and the laws of the state, or as may be hereafter prescribed." This provision does not expressly preclude the Legislature from committing any county business to some other agency. Neither does any other portion of the Constitution prohibit the exercise of such legislative power. And the exercise of it may not be questioned on the ground of any constitutional forbiddance. This is the plain effect of the opinion of the Supreme Court in Clark v. Finley, 93 Tex. 181, 54 S. W. 343. The fact that the enactment conflicts with any provision of general laws al-

ready existing when it was enacted would not at all affect its validity. The repugnant portions of the general laws give way to those of the special law, and its provisions will be given the same scope and effect as they would have without the existence of a general law having contrary application.

Being of the opinion that the Limestone county special road law is not in conflict with the Constitution of Texas and is a valid enactment, we will reverse the judgment and remand the cause.

Reversed and remanded.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes