**COMMISSIONERS' COURT OF LIMESTONE COUNTY et al. v. GARRETT et al.**
**(No. 296-3581.)**

(Commission of Appeals of Texas, Section B. Jan. 25, 1922.)

**1. Statutes ⬤97(2)—Act creating road system for particular county held local or special law.**

Sp. Laws 36th Leg. (1919) c. 74, to "create a more efficient road system for Limestone county," being applicable only to that part of the legislative jurisdiction comprised in such county, is a local or special law.

**2. Officers ⬤1—"Public office" defined.**

Public office is the right, authority, and duty created and conferred by law by which, for a given period either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government to be exercised by him for the benefit of the public.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Office.]

**3. Statutes ⬤100(1)—Road law for particular county held unconstitutional as creating offices.**

Sp. Laws 36th Leg. (1919) c. 74, providing for the election of citizen members of boards of road commissioners of Limestone county, and defined districts thereof, and conferring on them, as a majority, with the county auditor, of each board, sovereign powers as great as that of any two county commissioners, who constitute, together with the county judge, a quorum of the commissioners' court, under Laws 1876, p. 53, § 12, violates Const. art. 3, § 56, prohibiting the passage of local or special laws creating offices or prescribing the powers and duties of officers in counties, cities, towns, etc., though their authority continues only until roads provided for by bond elections are completed, and though, at the time of the adoption of section 56, there was no provision for any officers within a county, except those for counties, cities, towns, etc., as such; the limitation plainly referring to places only and not to classes of officers.

**4. Statutes ⬤100(1) Legislature cannot create offices by special law under its power to authorize bond issues in road districts.**

Under Const. art. 3, § 52, authorizing any defined road district to issue bonds, levy and collect taxes thereon, etc., as the Legislature may authorize, the Legislature cannot provide for citizen members of the board of road commissioners of a county and defined districts therein by special act, and vest them with authority contrary to section 56, prohibiting the creation by special law of offices in counties, cities, towns, etc.

**5. Statutes ⬤100(1)—Under authority to pass local road laws without notice, Legislature may not create offices by local act.**

Under Const. art. 8, § 9, authorizing the passage of local laws for the maintenance of public roads without local notice, the Legislature may not create offices by local or special law in violation of art. 3, § 56.

**6. Constitutional law ⬤48—Courts favor constitutionality.**

The court always favors the validity of a statute, and adopts such construction as will harmonize with the Constitution and enable the statute to take effect.

**7. Constitutional law ⬤45—Courts must declare act void if clearly unconstitutional.**

Where an act is clearly unconstitutional, no authority for its enactment existing, it is the court's duty to so declare.

**8. Statutes ⬤64(5)—Validity of special road law as to bond issues not affected by unconstitutionality in creating offices.**

The validity of provisions of Sp. Laws, 36th Leg. (1919) c. 74, relating to roads in Limestone county, adopting Rev. St. 1911, tit. 18, c. 2, as amended by Acts 1917, c. 203, and Acts 4th Called Sess. 35th Leg. (1918) c. 18, authorizing bond issues in counties, political subdivisions, and defined districts thereof, is not affected by its unconstitutionality in providing for citizen members of the board of permanent road commissioners.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Suit by Claud Garrett and others against the Commissioners' Court of Limestone County and others. From a judgment of the Court of Civil Appeals (230 S. W. 1010) reversing a judgment for defendants and remanding the cause, defendants bring error. Reversed, and judgment of trial court affirmed.

C. S. & J. E. Bradley, of Groesbeck, for plaintiffs in error.

Richd. Mays, of Corsicana, and A. B. Rennolds, of Mexia, for defendants in error.

HAMILTON, J. The Thirty-Sixth Legislature passed, and the Governor approved on March 15, 1919, a statute denominated "An act to create a more efficient road system for Limestone county, Texas," the provisions of which pertinent to the issues in this suit are:

"Sec. 4. In the event an election is held and bonds voted for the entire county, a board of permanent road commissioners shall be composed of the county judge, county auditor, and the four commissioners, and in addition thereto, three citizens to be selected from each commissioner's precinct. The persons to be chosen members of the board shall be men of wide business experience and good sound judgment. They shall be nominated by a majority vote of the property taxpaying, resident qualified voters, voting at such election at the same time and place as the vote is taken on the bond issue, and in the event such election is hereafter held and bonds voted for any political subdivision or defined district of said county, the manner of nominating and electing citizen members of the board for such political subdivision of defined district shall be the same as that pro-

viding for the election of citizen members for county board of permanent road commissioners: Provided that no political subdivision or defined district shall have more than three citizen members on said board.

"Sec. 5. And in the event any political subdivision or defined district of said county has voted for the issuance of bonds or an election has been ordered for the voting of the issuance of said bonds for the construction of permanent roads at the time of the passage of this act, there shall be created for such political subdivision or defined district a body to be known as the board of permanent road commissioners for —— (naming political subdivision) and hereinafter referred to as the 'board' which shall be constituted and shall consist of the county judge and the county commissioner in whose precinct said subdivision or defined district may be, and three citizens of such subdivision or defined district; and in the event the same shall contain all or any part of two or more commissioners' precincts, then the commissioner of each such precinct shall be a member of said board, and the citizen members of such board shall be nominated by a majority vote of the resident property taxpaying voters of such political subdivision or defined district at a special election to be held therein for that purpose, said election to be on the petition of twenty or more resident property taxpaying voters of such political subdivision or defined district, said election to be ordered and held under the general election laws of this state at a time and place or places to be designated in the order of election and the persons whose names are so nominated shall, by the commissioners' court, be elected as the members of the board to which they are nominated, and said persons, together with all citizen members of boards created under this act, shall qualify by taking oath of office required by law, and shall give bond, payable to the county judge or his successors in office, in trust for the permanent road fund for said county, or said political subdivision or defined district, in the amount and condition as now prescribed by law for county commissioners when acting as road supervisors, and shall continue to serve as members of said board until the roads provided for under such bond elections are completed. In case of any vacancy arising in the citizen's membership of such board, such vacancy·shall be filled by a majority vote of the remaining members of the board.

"Sec. 6. The county judge shall be the presiding officer of said board, and the members thereof shall elect one of their number as secretary. The members of said board whose salaries are not already provided for by law shall be paid the sum of three dollars each, for each day actually served.

"Sec. 7. The secretary of the board shall keep full and accurate minutes of the meetings, and of all transactions of the board and all contracts of the board shall be in writing and recorded in full in the minutes. Full and accurate accounts of the permanent road funds shall be kept in the finance ledger of the county and shall show all moneys received, from whom, and what source, all moneys expended, to whom paid, and for what purpose. All warrants on said funds shall be drawn by the county clerk as provided for by law as for other county warrants, upon accounts which have been duly filed with said clerk, and audited and allowed by said board, and certified by the clerk for payment over the signature of the presiding officer and secretary, and all provisions of the laws of this state regulating the auditing, approval and payments of accounts against counties shall apply herein. * * *

"Sec. 9. Said board shall adopt its own order of business, and shall fix times and manner of holding its regular or special meetings. Said board shall have the entire and exclusive charge. control and management of all matters pertaining or relating to the laying out and constructing of the permanent roads of the county, or such political subdivision or defined district, for which the bond issue was voted. The words 'road' or 'roads' as used herein, shall be taken to include and embrace all rights of way, roadbeds, ditches, drains, culverts, bridges, and other accessories pertaining to or in any way comprising any part of said roads. or highways being constructed under the provisions of this act. * * *"

Chapter 74, Special Laws of Texas, Thirty-Sixth Legislature, p. 236.

Thereafter in road district No. 15, a defined district in Limestone county, an election was held resulting in favor of the issuance of the bonds in the sum of $300,000 to be used for the purpose of constructing, maintaining, and operating macadamized, graveled, or paved roads, or in aid thereof, in that district. In accordance with the provisions of sections 4 and 5 of the act, above set out, three citizens of the district were elected as members of the board and all qualified as provided therein. The board then entered upon the performance of its functions; whereupon a controversy arose between the three citizen members and the county judge and county auditor, on the one hand, and the four county commissioners, as commissioners' court, and the city commission of Groesbeck, a town of more than 1,000 inhabitants and less than 5,000 inhabitants, incorporated under the general laws of Texas and situated in road district No. 15, on the other hand, concerning the streets along which the Exall Highway should be built through Groesbeck. The three citizen members, the county judge, and the county auditor, being all of the board as constituted except the county commissioner in whose commissioner's precinct road district No. 15 seems to be located, contended for one route through the town, and the county commissioners, as a commissioners' court, and the city commission of Groesbeck, contended for a different route. The board began to construct the highway through Groesbeck along the route chosen by it. The four county commissioners and the city commission of Groesbeck interfered, and the commissioners' court took from the board the whole business of constructing the highway. The board of permanent road commissioners for road district No. 15 and two citizens of the district then filed a petition for injunction against the

court. The petition alleged, among many other things, that a majority of the commissioners' court "have unlawfully interfered with and caused operations thereon to be suspended * * * and are preparing to arbitrarily construct the road through the town" along the streets favored for its location by the court, and prayed for an injunction restraining the court from "attempting in any manner, to prevent plaintiff road board from the discharge of its duty and lawful right in the construction of the highway" along the route chosen by it, and that "the court be enjoined from using any of the moneys of the road district in paying for work necessary by its attempt to change the location of said road as originally made," and that, "if it shall be held, for any reason, that defendant court has the power to improve the change in question, * * * that it be required to pay for same out of county funds subject to its disposal, and not out of any funds owned by road district No. 15."

Defendants answered, attacking the act as being in contravention of section 56 of article 3 of the state Constitution, providing, among many other things, that—

"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law: * * *

"Regulating the affairs of counties, cities, towns, wards or school districts. * * *

"Authorizing the laying out, opening, altering or maintaining of roads, highways, streets or alleys. * * *

"Creating offices, or prescribing the powers and duties of officers, in counties, cities, towns, election or school districts."

and that "in all other cases where a general law can be made applicable, no local or special law shall be enacted" except "for the preservation of the game and fish of this state in certain localities."

The trial court, after a hearing, denied the application. Plaintiffs appealed, and the Court of Civil Appeals held that the Limestone county special road law is not in conflict with the Constitution of Texas and is a valid enactment, and reversed the judgment of the trial court and remanded the cause. 230 S. W. 1010. Appellees, plaintiffs in error, made application for a writ of error. The writ was granted, and the cause has been assigned to us for review.

Was the act "to create a more efficient road system for Limestone county," above set out, a "local or special law" in the sense in which these terms are used in section 56, art. 3, of the Constitution?

[1] A local act is an act applicable only to a particular part of the legislative jurisdiction. 36 Cyc. 986, and authorities there cited; Vincent v. State, 235 S. W. 1084. A local law is one whose operation is confined to a fixed part of the state territory. Clark v. Finley, 93 Tex. 178, 54 S. W. 343. The act under consideration was applicable, in its terms, only to that particular part of the legislative jurisdiction of the Texas Legislature comprised within the boundaries of Limestone county. Its operation was confined to that fixed part of the state territory, and that it was a local or special law is not open to doubt.

[2] Did the act under consideration create officers?

"The most important characteristic which distinguishes an office from an employment or contract is that the creation and conferring of an office involves a delegation to the individual of some of the sovereign functions of government, to be exercised by him for the benefit of the public; that some portion of the sovereignty of the country, either legislative, executive or judicial, attaches, for the time being, to be exercised for the public benefit. * * * In distinguishing between an office and an employment, the fact that the powers in question are created and conferred by law is an important criterion. For, though an employment may be created by law, it is not necessarily so, but is often, if not usually, the creature of contract. A public office, on the other hand, is never conferred by contract, but finds its source and limitations in some act or expression of the governmental power. * * * Public officers are usually required by law to take the oath of office, and this fact goes far in determining the character of the duty. But the taking of the oath is not an indispensable criterion, and the office may exist without it, for, as has been said, the oath is a mere incident and constitutes no part of the office. * * * If a duty be a continuing one, which is defined by rules prescribed by the government, and not by contract, which an individual is appointed by government to perform, who enters on the duties pertaining to his station without any contract defining them, if those duties continue though the person be changed, it seems very difficult to distinguish such a charge or employment from an office or the person who performs the duties from an officer. * * * At the same time, however, this element of continuance cannot be considered as indispensable, for, if the other elements are present, it can make no difference whether there be one act or a series of acts to be done, whether the office expires as soon as the one act is done, or is to be held for years, or during good behavior." Mechem on Public Officers, §§ 4 to 8.

" 'Public office is the right, authority, and duty created and conferred by law by which, for a given period either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government to be exercised by him for the benefit of the public.' The correctness of this definition is nowhere questioned, so far as we know, and it is useless to add supporting authorities." Kimbrough v. Barnett, 93 Tex. 310, 55 S. W. 122.

"A man is not the less a public officer where his authority is confined to narrow limits; for it is the duty of his office and the nature of that duty which make him an officer, and not the extent of his authority." Mechem on Public Officers, § 9.

[3] The citizen members of the "board of permanent road commissioners" provided for in the act are elected by the property tax paying voters of the county or district. They, together with the county judge, county auditor, and the county commissioner or county commissioners of the commissioners' precinct or precincts embraced in territory for which the election for a bond issue is held, constituting the board, "have the entire and exclusive charge, control, and management of all matters pertaining or relating to the laying out and constructing of the permanent roads of the county, or such political subdivision or defined district for which the bond issue was voted. The words 'road' or 'roads' as used" in the act "shall be taken to include and embrace all rights of way, roadbeds, ditches, drains, culverts, bridges, and other accessories pertaining to or in any way comprising any part of said roads or highways being constructed under the provisions of this act." When county bonds are voted and issued for road purposes, the board consists of the five members of the commissioners' court, the county auditor, and twelve citizen members elected. When bonds are voted for the improvement of roads in a political subdivision or defined district of the county, the board consists of the county judge, county auditor, and one, two, three, or four county commissioners and three, six, nine, or twelve elected citizen members, according as the political subdivision or defined district in which the bonds are voted is embraced in one, two, three, or four commissioners' precincts, respectively, but is not inclusive of all the county. Then the board is composed of eighteen members in the event of a county bond issue and of eighteen members, fourteen members, ten members, or six members, according as the political subdivision or defined district in which the bond issue is voted is embraced in the territory of four, three, two, or one commissioner's precinct, respectively, it being, of course, necessary that, when such subdivision or defined district is embraced in the four commissioners' precincts, a part of one or more of such precincts be not included in such political subdivision or defined district. That is to say, it must be less in area than the whole county. The number of citizen members of such boards would be twelve, twelve, nine, six, and three, respectively, and the number of members of the commissioners' court on such boards, including the county judge, would be five, five, four, three, and two, respectively. The county auditor is a constant on each.

No quorum for any of these boards is fixed either by the Constitution or by the act under consideration or by any other statute.

"Where a quorum is not fixed by the Constitution or statute creating a deliberative body, consisting of a definite number, the general rule is that a quorum is a majority of all the members of the body." 29 Cyc. p. 1688; 15 C. J. p. 461.

Without tracing the facts and the law applicable thereto, as just discussed, to ultimate results in each instance, it is readily seen that, even in the instance in which the ratio of citizen members of the board to the whole number thereof is least—that in which the political subdivision or defined district in which such bonds are voted is embraced within one commissioner's precinct—such citizen members, with the county auditor, may constitute a quorum for business without the county judge or any of the commissioners. Much more might such citizen members, in any of the other instances of bond voting for roads referred to above, constitute a quorum of the board. No discrimination is made by the act or by any other provision of law among the members as to power or right to vote. Therefore all have equal rights to vote, and the vote of any member is potent in the same measure as that of any other member in the exercise of the "entire and exclusive charge, control, and management" of the matters committed to them by the statute as hereinbefore set out.

"The general rule is that, in the absence of an express provision to the contrary, a proposition is carried in a deliberative body by a majority of the legal votes cast." 29 Cyc. p. 1689, and authorities there cited.

When all members of the board interested in this cause are present at a meeting of the board, the citizen members thereof and the county auditor have the power, when acting together, to determine and control every act of the board, and, when the citizen members and the county auditor only are present, the three citizen members are able to control and decide by their votes alone any of the important matters committed by the act to the board that might arise at such meeting. They are as much favored by this act as to power as are the county commissioners by any statute. Any two county commissioners together with the county judge constitute a quorum of the commissioners' court. Texas Laws 1876, p. 53, § 12. Any three members of the commissioners' court constitute a court. Dalton et al. v. Allen et al., 110 Tex. 68, 215 S. W. 439. Can any one doubt that each citizen member of the board has authority, rights, and duties conferred by the act, or that by it each "is invested with a portion of the soverign functions of the government, to be exercised by him for the benefit of the public"? But, it is urged, this authority and these rights and duties and this exercise of sovereign functions continues for no given period, but only "until the roads provided for under such elections are completed." The reply is;

"If the other elements are present, it can make no difference whether there be but one act or a series of acts to be done—whether the office expires as soon as the one act is done, or is to be held for years or during good behavior." Mechem on Public Officers, supra.

"Where an individual has been appointed or elected, in a manner prescribed by law, has a designation or title given him by law, and exercises functions concerning the public, assigned to him by law, he must be regarded as a public officer." Whether he has been commissioned in form can make no difference; the commission is but evidence of title to the office. Bradford v. Justices, 33 Ga. 332.

The "act to create a more efficient road system for Limestone county" prescribes the manner of electing the citizen members of the board of permanent road commissioners, designates that name as the title of the body to which they are elected, confers upon them the exercise of functions of government of great importance to the public, requires of them the giving of bonds, and prescribes that they shall take the "oath of office required by law." That membership on the board is an office and that the citizen members thereof are officers cannot be refuted. The act does create officers.

It is urged that at the time section 56, art. 3, of the Constitution, was adopted there was no provision for any office or officer under the state within a county except offices and officers of or for counties, cities, towns, and election or school districts as such, and that those are the classes of officers and offices to which this constitutional provision should be given sole application," and that, since "the defined district comprised in Limestone county road district No. 15 is not any one of the subdivisions above enumerated, and the functions of the board members are not at all commensurate with those of an officer of any of them," the constitutional inhibition against the "creation of offices" by local or special law does not apply to the act under consideration.

Section 56, art. 3, was a part of the original Constitution of 1876. There is nothing in the language of that section suggestive of a limitation of the effect of the provision against creation of offices by local or special law to any class or classes of offices, nor is there a suggestion of such limitation in any other portion of the Constitution. The limitation refers to places only, and not to classes of officers. The places in which the creation of offices by special or local law is prohibited are counties, cities, towns, and election and school districts. It forbids the creation, by local or special act, of any office in any of those places. Where the meaning of a constitutional provision is plain, courts should not attempt to construe it, but should allow its clear meaning to apply. That the plain meaning of the constitutional provision is such as prevents the creation of any office of any kind in any of the subdivisions mentioned by local or special law cannot be refuted. The offices of citizen members of the board of permanent road commissioners provided for in the act come clearly within the inhibition of the constitutional provision unless the creation of such offices is otherwise provided by the Constitution.

[4] It is insisted that section 52 of article 3 and section 9, art. 8, of the Constitution, authorize all provisions of the act creating a special road system for Limestone county. Section 52, art. 3, is as follows:

"The Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the state, to lend its credit or to grant public money or thing of value in aid of, or to, any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company; provided, however, that under legislative provision any county, any political subdivision of a county, any number of adjoining counties, or any political subdivision of the state or any defined district now or hereafter to be described and defined within the state of Texas, and which may or may not include, towns, villages or municipal corporations, upon a vote of a two-thirds majority of the resident property taxpayers voting thereon who are qualified electors of such district or territory to be affected thereby, in addition to all other debts, may issue bonds or otherwise lend its credit in any amount not to exceed one-fourth of the assessed valuation of the real property of such district or territory, except that the total bonded indebtedness of any city or town shall never exceed the limits imposed by other provisions of this Constitution, and levy and collect such taxes to pay the interest thereon and provide a sinking fund for the redemption thereof, as the Legislature may authorize, and in such manner as it may authorize the same, for the following purposes to wit: * * * (c) The construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof."

This section provides only:

"That under legislative provision * * * any defined district * * * may issue bonds * * * and levy and collect such taxes to pay the interest thereon and provide a sinking fund for the redemption thereof, as the Legislature may authorize, and in such manner as it may authorize."

The legislative authority therein given cannot be construed to authorize the creation of offices and officers for any purpose. The section of the Constitution empowers "any county, any political subdivision of a county * * * or any defined district" to do the things therein set out under legislative supervision. That is to say, it authorizes the Legislature to prescribe the means for the exercise of the power therein granted to counties, etc. Of course, the Legislature had power to do all these things independ-

ently of the section, because it can do anything not forbidden by the Constitution. In the exercise of that supervision the Legislature could prescribe for the issuance of bonds, for the levy and collection of taxes to pay interest thereon, and for the creation of a sinking fund for the redemption thereof, but had no authority to go beyond these subjects and create, by special act, offices and, officers and invest them with authority contrary to the express provisions of the Constitution, as is done in the act under consideration.

[5] Section 9, art. 8, of the Constitution, contains the following language:

"And the Legislature may pass local laws for the maintenance of the public roads, and highways, without the local notice required for special or local laws."

This gives the Legislature authority "to confer upon a county power to do everything to which the taxes raised for the purpose may be lawfully applied." Dallas County v. Plowman, 99 Tex. 509, 91 S. W. 221. It does not authorize the Legislature, by implication or otherwise, to do what the Constitution elsewhere expressly forbids the Legislature to do, namely, to create offices, by local or special act. Nor does any other portion of the Constitution of Texas authorize the Legislature, by local or special act, to create offices.

[6, 7] As said by us in Vincent v. State, supra:

"It is a well-established rule that the court will always lean in favor of the validity of a legislative act; that, if there be a reasonable doubt as to the constitutionality of a statute, the court will solve the doubt in favor of the statute; that, where the Legislature has been left a discretion, the court will assume that the discretion has been wisely exercised; that, where the construction of a statute is doubtful, it will adopt such construction as will harmonize with the Constitution and enable it to take effect. But, where it is clear that the legislative act is contrary to the Constitution, no authority for its enactment existed, and it is the duty of the court so to declare. Thereupon the statute vanishes, and the Constitution prevails."

Section 56 of article 3 of the Constitution specifically declares that the Legislature shall not pass any local or special act "creating offices" except as otherwise provided in this Constitution. There is no other provision of the Constitution authorizing the passage of an act creating the offices. Therefore the Constitution expressly forbade the passage of such an act in so far as it provides for the creation of a board or boards of permanent road commissioners, and all those provisions are positively contrary to the supreme law of the state, and are therefore void.

[8] None of those provisions of the act adopting chapter 2, tit. 18, R. S. 1911, as amended and added to by chapter 203, General Acts 1917, and chapter 18, General Acts Fourth Called Session Thirty-Fifth Legislature, relating to the issuance of bonds in counties, political subdivisions, and defined districts thereof, is affected by this judgment, nor is any bond issue had or to be had under the provisions of the act invalidated by reason of this judgment.

What we have said disposes of the case and makes it unnecessary to discuss the other questions presented.

Therefore we recommend that the judgment of the Court of Civil Appeals be reversed, and that the judgment of the trial court be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

⬨➝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes