County of Henderson et al. v. James V. Allred,
Attorney General.

No. 5915. Decided June 10, 1931.
(40 S. W., 2d Series, 17.)

 W. P. Dumas, for relator.

The bonds in question were authorized to be issued by Henderson county under authority directly conferred by said H. B. No. 448—Acts 1931—and authority for the Legislature to enact such special law was and is expressly conferred by section 9, article 8 of the Constitution which authorizes the Legislature to "pass local laws for the maintenance of the public roads and highways, without the local notice required for special or local laws."

As illustrating the trend of thought and construction indulged by the courts of Texas on this subject, attention is first directed to the opinion of the Dallas Court of Civil Appeals, in the case of Smith v. Grayson County, 44 S. W., 922, in which the Texas Supreme Court refused a writ of error. In that case it was urged that the Constitution limited the purpose for which local laws may be enacted to the maintenance of roads already constructed, and would not authorize the passage of a statute creating a road system. In disposing of this question, the court said:

"We do not think the word 'maintenance' as used in this section of the Constitution was intended to be used in this restricted sense. By the use of the words 'maintenance of public roads and highways' the framers of the Constitution had reference to maintaining a system of public roads and highways which would *include all the necessary powers* to provide and keep up a system of highways".

To the same effect is the decision of the Texas Supreme Court in Dallas County v. Plowman, 91 S. W., 221, in which case the court concluded that the authority conferred upon the Legislature to pass local laws for the maintenance of public roads *"authorizes the body to confer upon a county power to do everything to which the taxes raised for the purpose*

*may be lawfully applied * * *."* Such is the language of the Supreme Court of Texas, and this holding has not been altered or affected by any subsequent decision; and here attention is especially called to the fact that Dallas County v. Plowman, supra, was decided by the Supreme Court of Texas on February 19, 1906—and which was subsequent to the adoption of the 1903 amendment to section 52, article 3 of the Constitution. If it had been the purpose and intent of thè people of Texas, in the adoption of the amendment to section 52, article 3, to deprive counties of the power and authority to levy road taxes pursuant to section 9, article 8,—and deprive the Legislature of authority to confer upon counties the right to issue bonds without a vote (article 608, R. S., 1911; article 717, R. S., 1925), would not that important question have been raised in Dallas County v. Plowman, supra, and decided by the Supreme Court?

*James V. Allred,* Attorney General, and *Scott C. Gaines,* Asst. Atty. Gen., for respondent.

Your respondent respectfully shows that he has determined and held, in passing upon said bonds, that same would be improper to be issued for the following reasons:

That by the general statutes of the State of Texas, article 701, it is provided as follows: *"The bonds of a county or an incorporated city or town shall never be issued for any purpose unless a proposition for the issuance of such bonds shall have been first submitted to the qualified voters who are property tax payers of such county, city or town."*

That section 56, article 3, of the Constitution, prohibits the Legislature from passing any local or special law *"Regulating the affairs of counties,* towns, wards, or school districts". And furthermore prohibits such local and special laws *"In all other cases where a general law can be made applicable".*

The law upon which the act in question evidently purports to be based is section 9, article 8 of the Constitution, which provides as follows: "And the Legislature may pass local laws for the maintenance of the public roads and highways, without the local notice required for special or local laws."

Respondent recognizes that this court has held in the case of Dallas County v. Plowman, 91 S. W., 221, that the term *maintenance* of the public roads includes the laying out of new roads, as well as the maintenance of the old; but the purported bonds in question are not to be used either for the *building* of new roads or the *maintenance of* the old roads; nor are the proceeds of the said bonds to be expended or used either in the construction or maintenance of roads; but on the contrary, the only purpose of the act is to *refinance and change the form of existing indebtedness,* which does not seem to be within the term maintenance of the public roads, but on the contrary, it seems to be an attempt *to regulate*

*the fiscal affairs of the county;* contrary to section 56, article 3 of the Constitution.

In reaching this conclusion, respondent has been influenced by the case of Austin Brothers v. Patton, decided by Commission of Appeals, section B, and reported in 288 S. W., 182, in which a special act of the Legislature,—similar to the one in question,—was passed to create a board to assist in supervision and control of the expenditure of the road fund of the county; and same was passed as a special road law. The law was held void as being in conflict with article 3, section 56, of the Constitution, and it was held that it was not authorized under article 8, section 9, of the Constitution above quoted. In this case Judge Speer discussed all of said constitutional provisions, and the case of Dallas County v. Plowman, 99 Texas, 512, 91 S. W., 221, relied upon by the relator herein; and concluded that the mere calling of the act a road law, did not take it out of the prohibition of section 56, article 3. In this case the Commission of Appeals summarized as follows:

"As shown above, our Supreme Court has held that the words, 'the maintenance of public roads' include the laying out, opening, and construction of new roads. Therefore the authority conferred by the constitutional amendment carries with it the right to regulate the affairs of the county, *only in such respects as are necessarily and appropriately connected with or incidental and subsidiary to the object of such limited power* the maintenance including the laying out, opening, and construction of public roads. *It does not authorize the subtraction, by local or special laws, of powers from County Commissions and the Commissioners' Court conferred by general laws. It does not authorize a change in the financial system of counties fixed by general laws.* It does not authorize the creation of offices and the clothing of those officers with function already performed by existing officers as provided for by general laws. *None of these are incidental or necessary to the maintenance, laying out, opening, and construction of roads.* It merely authorizes the application of the financial system and the governmental machinery already existing to the action authorized thereby. *The financial system and the governmental machinery already existing under general laws are ample for all such activities.* If the amendment had been intended to nullify the clause of section 56 of article 3, prescribing that the Legislature should not pass any local or special law regulating the affairs of counties; it would have been a simple matter to have added to it, at the time of its submission, some such words as, "and provide for the management and control thereof," as was done in the amendment authorizing the Legislature to provide for the formation of school districts by special laws, Constitution, art. 3, par. 7."

In the light of the language of the Constitution, and the construction placed upon it, by the Commission of Appeals, and approved by this Honorable Court, respondent does not feel justified, in the absence of instruc-

tions from your honors (irrespective of the limitation of article 3, section 52, referring to this particular kind of bonds), in holding that the special act inquestion was authorized to and did have the effect of repealing article 701 of the Revised Statutes above quoted. If said article is applicable, the issuance of bonds in question, would be unwarranted and prohibited by the statutes themselves.

*J. M. Sanders, Oliver J. Todd, Caldwell & Raymond* and *McBride, O'Donnell & Hamilton* as amici curiae.

MR. COMMISSIONER LEDDY delivered the opinion of the court.

Henderson county, through its proper officers, has been granted leave to file in this court its petition for mandamus to compel the attorney general of this state to approve $148,000 of road and bridge funding bonds ordered issued by the commissioners' court of said county under the express authority conferred by the terms of H. B. No. 448, Special Acts 42nd Legislature (1931), p. 121, chap. 46.

The act in question is a local or special road law enacted for Henderson county without local notice having been given. Under its terms the commissioners' court of Henderson county was authorized to fund into bonds of the county such of its legal indebtedness chargeable against the road and bridge fund as existed January 1, 1929, which might be represented by script or time warrants. It was also provided in said act that such funding bonds might be issued without the necessity of submitting the question of their issuance to a vote of the people of the county.

It is conceded that relator is entitled to the issuance of the writ of mandamus unless respondent was justified in refusing to approve said issue of bonds upon either or both of the following grounds:

First, because section 52 of article 3 of the Constitution as amended in 1904 prohibits the Legislature from authorizing any county to issue bonds except for the purposes named and upon compliance with the procedure therein outlined.

Second, because the act of the Legislature authorizing the issuance of funding bonds by Henderson county without a vote of the people is violative of the provisions of section 9, article 8, and section 56 of article 3 of the Constitution of this state.

Respondent's refusal to approve said bonds cannot be justified on the first of the above grounds, as we have this day decided in the case of Collingsworth county against the respondent herein that the adoption of the amendatory portion of section 52 of article 3 in 1904 did not affect or impair the right of the Legislature to authorize a county to issue bonds for any of the purposes authorized by other provisions of the Constitution.

The contention that the passage of the local or special road laws for Henderson county is prohibited by the terms of section 56, article 3 of

the Constitution cannot be sustained. This section of the Constitution provides:

"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law: * * * authorizing the laying out, opening, altering, or maintaining of roads, highways, streets, or alleys."

The above provision is a part of the original Constitution of 1876. Its terms operated to prohibit the Legislature without proper notice having been given from enacting any local or special law in regard to public roads from the date of its adoption in 1876 until December 19, 1890. On the latter date, however, section 9 of article 8 was amended. The amendatory portion of this article contained the following clause:

"And the Legislature may pass local laws for the maintenance of public roads and highways without the local notice required for local or special laws."

On January 7, 1907, section 9 was again amended by changing its former terms, but the above provision with reference to the passage of local or special road laws was re-enacted in the identical language in which it was originally adopted.

From the above quoted provisions of the Constitution it will be readily seen that local or special road laws are expressly exempted from the operation of the provisions of section 56, article 3. The power of the Legislature to enact such local or special laws without the required notice is therefore placed beyond cavil.

The question then arises, has the latitude allowed the Legislature to pass a local or special road law been exceeded so as to bring the same within the condemnatory provisions contained in section 56, article 3, which forbids the Legislature from passing any local or special law "regulating the affairs of counties, cities, towns, wards, or school districts".

In the case of Smith v. Grayson County, 18 Texas Civ. App., 153, 44 S. W., 922, in which writ of error was denied by the Supreme Court, the contention was made that the Constitution limited the purposes for which a local or special road law could be enacted to the "maintenance" of roads already constructed and that the terms of the Constitution prohibited the passage of a local or special law authorizing the building, laying out, and construction of public roads. This contention was denied and the conclusion reached by the court that it was the clear intention of the framers of the Constitution by the use of the word "maintenance" to "include all of the necessary powers to provide and keep up a system of highways".

A similar position was taken in the case of Dallas County v. Plowman, 99 Texas, 509, 91 S. W., 221, 222. It was likewise denied by our Supreme Court. It was expressly held that the authority to pass local and special laws for the maintenance of public roads contained in the Constitution "authorized that body to *confer upon a county power to do everything to which the taxes raised for the purpose may be lawfully applied.*"

It will be noted that the special law in question empowers the commissioners' court of Henderson county to fund into bonds "such legal indebtedness of the county chargeable against the road and bridge fund as it existed January 1, 1929." It therefore appears that no indebtedness not legally incurred in the construction, maintenance, and operation of its public road system is authorized to be funded into bonds of the county. If the Legislature possessed the power to control by local or special laws the laying out, construction and mainteance of public roads in Henderson county, which cannot be doubted under the foregoing decisions, then it must necessarily follow that it has the power to control and regulate by such a law the expenditure of all funds used for such purposes. Undoubtedly, the Legislature might lawfully, by local law, have made provision for the issuance by the county of the warrants and script which it has now authorized to be funded into negotiable bonds. The power to authorize the creation of such indebtedness and to provide the form in which it shall be evidenced necessarily includes the power to authorize a change in the form thereof. The special road law merely authorizes the county to change the form of its indebtedness theretofore lawfully incurred in the laying out, construction, and operation of its road system, and to extend its time of payment. The practical effect of the special act in question is merely to permit the county to change the evidence of its idebtedess into a form of obligation more attractive to investors. The result sought to be accomplished is to diminish the interest rate of the county's road obligations, thereby leaving more of the road and bridge fund taxes available for the construction and operation of its road system.

There is no inhibition in the Constitution to prevent the Legislature from empowering a county to issue its negotiable bonds without a vote of the people, except the bonds authorized to be issued under the provisions of section 52 of article 3. Bell County v. Lightfoot, 104 Texas, 346, 138 S. W., 381. The right of the Legislature to authorize a county to issue bonds without a vote of the people, under other provisions of the Constitution then section 52 of article 3, has been definitely settled by the decision of our Supreme Court in the above case.

If it was within the power of the Legislature in the first instance to have authorized Hederson county by a local or special law to issue its negotiable bonds without a vote of the people and use the proceeds thereof for the laying out, constructing and maintaining of its road system, upon what theory can it be held that it would be without power to authorize a change in the mere form of indebtedness lawfully incurred for such purpose? Indisputably the Legislature had the power to authorize Henderson county by local or special law to issue warrants or bonds as a means of obtaining funds to be used in the building and operation of its road system without submitting the question as to the issuance thereof to a vote of the people of the county. This being true, it logically follows that where an

indebtedness has been lawfully incurred for road purposes by Henderson county and its obligations issued therefor in the form of script and warrants, that the Legislature may validly authorize the county to change such form of indebtedness by funding the same into the negotiable bonds of the county.

We are referred to the cases of Altgelt v. Gutzeit et al., 109 Texas, 123, 201 S. W., 400; Meyenberg v. Ehlinger, County Judge (Texas Civ. App.), 224 S. W., 312, 315; Commissioners' Court of Limestone County v. Garrett (Texas Com. App.), 236 S. W., 970, and Austin Bros. v. Patton (Texas Com. App.), 288 S. W., 182, as being decisive of the invalidity of the special road law which is here assailed.

A special road law was declared invalid in the Altgelt case as an attempt to regulate the affairs of the county by changing the salaries of members of the commissioners' court to a fixed compensation per year in lieu of the fees and per diem provided by the general law. In the Meyenberg case the special road law was struck down because it authorized the Legislature to "levy a local tax for road purposes contrary to other provisions of the Constitution limiting the power of the Legislature in levying taxes". In the Limestone county case the special road law was declared void by the court because the Legislature was not authorized in passing a local law to create offices, and in the Austin Brothers case the law involved was condemned because it authorized the creation of offices by local law and clothed the officers with functions already performed by existing officers under the provisions of the general laws.

It is obvious from the above cursory review of the cases relied upon that the holding in neither of them is in conflict with the conclusion we have reached in this case. All of the special laws condemned by the above decisions were attempts to regulate by local law the affairs of a county in direct contravention of the provisions of the Constitution of this state, while the special road law for Henderson county is merely an act by which the Legislature has made provision for the disposition of the county's road taxes for a purpose for which they may be lawfully applied. The question as to whether it possessed the power to do this is set at rest by the decision of our Supreme Court in Dallas County v. Plowman, supra.

It is ordered that the writ of mandamus issue as prayed for.

The foregoing opinion is adopted as the opinion of the Supreme Court, and judgment will be entered in accordance therewith.

C. M. Cureton, Chief Justice.