

# THE ATTORNEY GENERAL
## OF TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

AUSTIN 11, TEXAS

October 12, 1951

Hon. Henry Wade
District Attorney
Dallas County
Dallas, Texas

Opinion No. V-1315

Re: Constitutionality of
Dallas County Road
Law.

Dear Sir:

Your request for an opinion relates to the constitutionality of House Bill 961, Acts 47th Leg., R.S. 1941, ch. 458, p. 729, as amended. The following questions are presented for determination:

"1. Is the entire Act (H.B. 961, Ch. 458, 47th Leg., Reg. Sess. as amended June 3, 1949 and June 2, 1951) unconstitutional as being in contravention of Article III, Sec. 56, Texas Constitution, which prohibits the enacting of local and special laws to regulate the affairs of a county, to regulate labor or elections, or where already existing general laws can be made applicable?

"2. Are the following Sections, if taken individually, valid and constitutional: 1, 4 (auto purchasing part), 6, 8, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, and 27?

"3. Are the following Sections, if taken individually, invalid and unconstitutional: 2, 3, 4 (except for auto purchasing part), 5, 7, 9, 10, 11, and 12?

"4. If any of the sections are found to be unconstitutional, is there sufficient basis for the remaining sections to stand and be considered in force and effect?

"5. Are the provisions applying to the naming and prescribing of the functions of the County Engineer (Sec. 4) and the County Purchasing Agent (Sec. 11) constitutional?

"6. May the Legislature constitution-
ally single out Dallas County in Sections
22 and 24 and make the provisions of this
Act as constituted apply solely to that
county to the exclusion of all others?"

House Bill 961, commonly referred to as
the "Dallas County Road Law," is described in its
caption as "An Act to create a more efficient road
system for Dallas County, Texas, for the maintenance
of the public roads and highways other than duly
designated State highways of Dallas County." House
Bill 961 was amended in 1949 by House Bill 862,
Acts 51st Leg., R.S. 1949, ch. 311, p. 579. The ef-
fect of this amendment was to delete the salary
limitations of the county engineer in Section 4 and
the salary limitations of the purchasing agent in
Section 11 of the act. It was again amended by
Senate Bill 383, Acts 52nd Leg., R.S. 1951, ch. 328,
p. 563, by adding a new section to be known as Sec-
tion 25a, which gave the commissioners' court the
power to create a county planning board and vested
in the court the power to adopt a master plan for
roads of the county.

Since House Bill 961 applies only to
Dallas County, it is apparent that the bill falls
within the classification of a local or special
law. Fort Worth v. Bobbitt, 121 Tex. 14, 36 S.W.
2d 470, 41 S.W.2d 228 (1931); Bexar County v. Ty-
nan, 128 Tex. 223, 97 S.W.2d 467 (1936); Miller v.
El Paso County, 136 Tex. 370, 150 S.W.2d 1000
(1941); Anderson v. Wood, 137 Tex. 201, 152 S.W.2d
1084 (1941). To be invalid as such, it must come
within the prohibition of Section 56 of Article
III of the Constitution of Texas.

Section 56, Article III, Constitution of
Texas, provides in part:

"The Legislature shall not, except
as otherwise provided in this Constitu-
tion, pass any local or special law, .
. .

"Regulating the affairs of counties,
. . .

"Authorizing the laying out, opening,
altering, or maintaining of roads, high-
ways, streets or alleys;

Hon. Henry Wade, Page 3 (V-1315)

"   . . .

"And in all other cases where a general law can be made applicable, no local or special law shall be enacted; . . ."

However, Section 9, Article VIII, Constitution of Texas, provides in part:

"And the Legislature may pass local laws for the maintenance of the public roads and highways, without the local notice required for special or local laws."

This provision, which was added to the Constitution by an amendment adopted in 1890, is an exception to Article III, Section 56. Henderson County v. Allred, 120 Tex. 483, 40 S.W.2d 17 (1931).

As stated in Quinn v. Johnson, 91 S.W.2d 499, 501, (Tex. Civ. App. 1936, error dism.),

". . . It is no longer open to question that any special or local road law which limits its scope to what may reasonably be considered matters pertaining to the 'maintenance' of the public roads and highways is valid. (Citations.)"

The scope of the term "maintenance of the public roads and highways" as used in Article VIII, Section 9, has been discussed in several cases. In Smith v. Grayson County, 44 S.W. 921, 923 (Tex. Civ. App. 1897, error ref.), the court held that the maintenance of roads including the laying out of new roads, saying:

". . . By the use of the words 'maintenance of public roads and highways,' the framers of the constitution had reference to maintaining a system of public roads and highways, which would include all the necessary powers to provide and keep up a system of highways."

In Tarrant County v. Shannon, 129 Tex. 264, 104 S.W.2d 4, 5, 7 (1937), the court said:

"The validity of H.B. No. 416, which conferred the alternative rights in condemnation upon certain counties falling within the provisions of this act, was not challenged or questioned in the principal opinion of the Court of Civil Appeals. However, in the concurring opinion the question was raised that H.B. No. 416 violates article 8, section 9 and article 3, section 56, of the Constitution; and it further questioned the correctness of the construction of article 3, section 56, of the Constitution by this court in the case of Dallas County v. Plowman, 99 Tex. 509, 91 S.W. 221, in which case it was held that local or special road laws may be enacted without giving the local notices required for special or local laws.

" . . .

"Furthermore, in that case the court in substance held that the phrase 'maintenance of the public roads' in article 8, section 9, of the Constitution, amendment of 1890, authorizing the Legislature to pass local laws for such purpose, includes in its scope the laying out, opening, and construction of new roads as well as the repairing of those already laid out. And the act of the 24th Legislature, supra, enacting a local road law for Dallas county, which provided for condemnation of lands by the county upon the same proceedings as by a railroad company was not, in view of such amendment, rendered unconstitutional by article 3, section 56, and article 11, section 2, of the Constitution. It was also held, in effect, that the meaning of the word 'maintenance' in the amendment to article 8, section 9, of the Constitution is not restricted, as in article 3, section 56, subdivision 5, by the context, to the keeping up of roads, as distinguished from laying out and opening them, nor is it confined to its narrow and literal construction; but it must be held to embrace all the things necessary to accomplish the obvious purpose of the

amendment, including the opening as well
as repair of roads. The local law passed
for Dallas county was held valid."

Also see Tinner v. Crow, 124 Tex. 368, 78
S.W.2d 588 (1935).

The subject matter included within a spe-
cial road law must be incidental or necessary to
the maintenance of roads. In Austin Bros. v. Patton,
288 S.W. 182 (Tex. Comm. App. 1926), the court stated
at pages 187, 188:

" . . . The authority conferred by
section 9, art. 8, of the Constitution,
supra, is not 'to enact special road
laws' of all kinds, for all purposes in-
discriminately, but is authority merely
to pass local laws for the maintenance
of the public roads and highways. . . .

" . . . As shown above, our Supreme
Court has held that the words, 'the
maintenance of public roads,' include
the laying out, opening, and construc-
tion of new roads. Therefore the au-
thority conferred by the constitutional
amendment carries with it the right to
regulate the affairs of the county only
in such respects as are necessarily and
appropriately connected with or inciden-
tal and subsidiary to the object of such
limited power -- the maintenance, in-
cluding the laying out, opening, and
construction of public roads. . . ."

Since, as shown by the above cases, the
Legislature may pass local or special laws per-
taining to the "maintenance" of roads and highways,
it becomes necessary to determine whether the var-
ious provisions of the Dallas County Road Law come
within the meaning of that term as interpreted by
the Texas courts, and therefore within the scope
of the exception contained in Section 9 of Article
VIII.

It is well settled that in determining
the constitutionality of a statute it is the duty
of the courts to uphold the legislative enactment

if at all possible and to adopt any reasonable con-
struction which will place the statute in harmony
with the Constitution rather than one which will
cause the statute to be in violation thereof. Pickle
v. Finley, 91 Tex. 484, 44 S.W. 480 (1898).  Also,
it is our duty to give effect to this rule of stat-
utory construction in considering separate sections
of an act, especially where the Legislature has ex-
pressly provided for severability as it has done in
Section 25 of the act under consideration.  Att'y
Gen. Op. V-1263 (1951).  With these rules in mind,
we will now discuss the separate sections of the
act.

Section 1 of the statute prescribes the
power and authority of the Commissioners' Court of
Dallas County to adopt a system for the construc-
tion and maintenance of the public roads of the
county.  The provisions of this section are clearly
within the scope of the exception authorized in
Section 9 of Article VIII, and, in our opinion, the
section is constitutional.

Likewise, Section 6 relates directly to
the construction and maintenance of roads.  This
section confers on the Commissioners' Court the
right to purchase or condemn property necessary for
the construction and maintenance of roads and pre-
scribes the procedure for condemnation proceedings.
A provision giving similar authority to the Commis-
sioners' Court of Tarrant County was held valid in
Tarrant County v. Shannon, supra.  It is our opin-
ion that Section 6 is constitutional.

Section 8 authorizes the Commissioners'
Court of Dallas County to require the draining of
ditches or borrow pits which impede the proper
drainage of water accumulating on or along roads
and highways.  We think the powers conferred in
this section clearly pertain to the maintenance
of roads and that the section is valid.

Section 9 abolishes road overseers and
payment of road taxes by labor and requires all
moneys received from direct taxation for the con-
struction and maintenance of roads be placed to
the credit of the County Road and Bridge Fund. We
think these are valid provisions.

Sections 13 through 17 relate to the issuance of bonds for road and bridge purposes and the moneys received from the sale of such bonds. In Henderson County v. Allred, 120 Tex. 483, 40 S.W. 2d 17, 19 (1931), the Supreme Court held:

". . . If the Legislature possessed the power to control by local or special laws the laying out, construction, and maintenance of public roads in Henderson county, which cannot be doubted under the foregoing decisions, then it must necessarily follow that it has the power to control and regulate by such a law the expenditure of all funds used for such purposes. . . . Indisputably the Legislature had the power to authorize Henderson county by local or special law to issue warrants or bonds as a means of obtaining funds to be used in the building and operation of its road system . . ."

Since the enactment of these provisions is not inhibited by Section 56 of Article III, we have only to consider whether any of the provisions of these sections violate other constitutional requirements.

Section 13 provides in part:

"Whenever the Commissioners Court shall deem it necessary or expedient to build, construct, improve, repair, or maintain roads of a permanent nature in said County with the proceeds of the sale of bonds issued for road and bridge purposes under the terms of this Act, said Court shall at any regular meeting pass and record in its minutes a resolution setting forth that it is the sense of said Court that public roads and bridges of a permanent nature shall be built, constructed, improved, repaired, or maintained in said County and that the County or any Road District thereof should issue its bonds to raise money for that purpose in an amount to be named in such resolution, and said resolution shall be submitted to the vote of the property-owning,

> qualified voters of said County at any
> regular or special election which the
> Court may order for that purpose, and
> if at such election a two-thirds major-
> ity of the votes cast shall be for such
> resolution . . ."

It is clear that the "road and bridge"
purposes refer to the fifteen cent road and bridge
tax authorized by Section 9 of Article VIII (county-
wide road and bridge tax). This is made clearer by
Section 15, which provides that "nothing in this
language or in the terms of this Act shall be held
to impair the right of the County or any Road Dis-
trict thereof to issue bonds under the provisions
of Article 3, Section 52 of the State Constitution
and the Statutes enacted pursuant thereof." In
other words, unlimited tax road bonds issued by
counties and road districts are excepted from the
provisions of the Act.

Section 13 provides for the issuance of
bonds by the County "or any Road District thereof."
A road district can issue bonds only under Section
52 of Article III. The 15¢ road and bridge tax
under Section 9 of Article VIII is a county-wide
tax, and may be levied only over the entire county.
Any attempt to authorize a road district to levy a
tax under Section 9 of Article VIII would be un-
constitutional. Clearly, therefore, Section 13 is
unconstitutional in attempting to authorize road
districts to issue bonds under Section 9 of Article
VIII. Section 13 is valid, however, insofar as it
pertains to the issuance of bonds by the county for
road and bridge purposes. Sections 14, 15, 16, and
17 likewise are valid to the extent that they apply
to such county bonds and the moneys received from
the sale thereof.

Section 18 prescribes the manner in which
contracts for road improvements are to be awarded.
The making of contracts for road improvements, in
our opinion, comes within the scope of a valid local
road law.

Section 25a, which was added by the 1951
amendment, authorizes the Commissioners' Court to
create a County Planning Board "for the purpose of

regulating county planning, platting and subdivisions." The section also confers upon the Commissioners' Court the same powers within the area under its jurisdiction with reference to planning, platting, and approving of subdivision as cities are empowered to exercise under Article 974a, V.C. S. The Commissioners' Court is authorized to adopt rules and regulations governing the subdividing and platting of territory, "which said rules and regulations shall take into consideration the general layout of highways, roadways, their connection with either present or projected roads, and how these highways and roadways may connect with streets within the city, or projected streets, connecting therewith, so as to provide an orderly development in the interest of public health, safety, and general welfare of the county." Although the motive for the grant of authority is in broad language, we think the effect of the section is to enable the Commissioners' Court to provide for an orderly development of the county road system. The statute expressly provides that the Commissioners' Court or the planning board is not given authority to set up zoning regulations or building codes. In a letter opinion to the Governor of Texas on May 31, 1951, we held that this section was validly enacted under Section 9 of Article VIII.

You have asked us specifically whether certain sections of the statute are unconstitutional, and we shall now refer to these particular sections.

Section 2 provides that each county commissioner shall devote all of his time to the duties of his office and be in attendance at all sessions of the court. It also fixes the compensation of the county commissioners and provides that such compensation "shall be in full for all services rendered said county." We believe this section violates Article III, Section 56 of the Constitution, since it encompasses a regulation of county affairs other than the maintenance of roads. Altgelt v. Gutzeit, 109 Tex. 123, 201 S.W. 400 (1918); Kitchens v. Roberts, 24 S.W.2d 464 (Tex. Civ. App. 1930, error ref.).

Section 3 requires the County Judge to appoint standing committees composed of two or more county commissioners for supervising the various departments of the county's affairs. Like Section 2,

this section embraces matters outside the scope of a road law and is in violation of Section 56 of Article III.

Section 4 authorizes the appointment of a county engineer and prescribes his duties and qualifications. He is given the custody and control of all machinery, equipment, tools, supplies, and all other property purchased out of the Road and Bridge Fund to be used in the maintenance of county roads. All maintenance, repair, drainage, and construction work on all county roads is placed under his control and supervision. However, he is at all times "under the supervision and control" of the commissioners' court.

Although Article III, Section 56 of the Constitution prohibits the passage of any local or special law "creating offices, or prescribing the powers and duties of officers, in counties . . .," Henderson County v. Allred, supra, states that "local or special road laws are expressly exempted from the operation of the provision of section 56, article 3." (40 S.W.2d at 18.) Also, in Smith v. Grayson County, supra, it is said that "none of the prohibitions contained in section 56, article 3, are applicable" to a local road law. But see Austin Bros. v. Patton, supra; Commissioners' Court of Limestone County v. Garrett, 236 S.W. 970 (Tex. Comm. App. 1922); Anderson v. Houts, 240 S.W. 547 (Tex. Civ. App. 1922). It is possible, therefore, that the Legislature may validly enact a local road law creating an office, provided the duties of the office are such as are incidental or necessary to the "maintenance" of roads. However, it is unnecessary for us to express an opinion on this question here, since we think it is clear that the county engineer in question is an employee and not an officer.

In Dunbar v. Brazoria County, 224 S.W.2d 738 (Tex. Civ. App. 1949, error ref.), the court held that a county road engineer was not a public officer but a member of the administrative personnel of the county road department. We think the same is true of the county engineer provided for Dallas County, even though Section 4 refers to the position as an "office", provides for a term of two years, and requires him to take an oath and execute a bond.

Various tests have been used by the courts in determining whether a particular person is an officer or an employee, some of these tests being tenure of office, requirement of a bond, duty to take an oath of office, and the manner in which the compensation of the position is fixed. See Notes, 53 A.L.R. 595 and 140 A.L.R. 1076. However, all of these tests are merely circumstantial and not conclusive. The most important test, and the only one which appears to be conclusive, is whether the creation of the position involves a delegation to the person filling the position of some part of the sovereign power or functions of government to be exercised by him for the benefit of the public. This test is set out in 53 A.L.R. 595 as follows:

"It may be stated, as a general rule, deducible from the cases discussing the question, that a position is a public office when it is created by law, with duties cast on the incumbent which involve an exercise of some portion of the sovereign power and in the performance of which the public is concerned, and which also are continuing in their nature and not occasional or intermittent; while a public employment, on the other hand, is a position which lacks one or more of the foregoing elements."

A similar statement of the rule is found in Mechem, Public Offices and Officers (1889) 5, Sec. 4:

"The most important characteristic which distinguishes an office from an employment contract is that the creation and conferring of an office involves a delegation to the individual of some of the sovereign functions of government, to be exercised by him for the benefit of the public; that some portion of the sovereignty of the country, either legislative, executive or judicial, attaches, for the time being, to be exercised for the public benefit. Unless the powers conferred are of this nature, the individual is not a public officer."

The rule as above stated has been quoted with approval in the following Texas cases: Kimbrough v. Barnett, 93 Tex. 301, 55 S.W. 120 (1902); Knox v. Johnson, 141 S.W.2d 698 (Tex. Civ. App. 1940, error ref.); Robertson v. Ellis County, 84 S.W. 1097 (Tex. Civ. App. 1905).

Under the above test, we think it is clear that the county engineer authorized by Section 4 of this act is an employee and not an officer, since he has not been delegated any of the sovereign power or functions of government to be exercised by him for the benefit of the public, but is under the complete supervision and control of the Commissioners' Court.

Section 4 also authorizes the Commissioners' Court to purchase necessary automobiles for the use of the county commissioners "in the building and construct- ing of public roads," to be paid for out of the Road and Bridge Fund. A like provision in the road law for Jefferson County was upheld in Quinn v. Johnson, 91 S.W.2d 499 (Tex. Civ. App. 1936, error dism.).

The last paragraph of Section 4 provides that the county judge, county auditor, and county com- misioners may be allowed necessary traveling expenses when traveling in connection with county business, to be paid out of either the General Fund or the Road and Bridge Fund. The provision does not limit the ex- penses to those incurred in connection with the main- tenance of roads. In Att'y Gen. Op. 0-4827 (1942), this provision of the Dallas County Road Law was held unconstitutional in the following language:

". . . If the provision of said road law with reference to the traveling ex- penses of the commissioners' court quoted in your letter had been limited to travel- ing expenses of the commissioners' court with reference to the maintenance of the public roads of the county and payment limited to the Road and Bridge Fund of the county such provision would have been valid. But the provision under consideration here is clearly not so limited. Under the un- equivocal assertions of the court in the case of Jameson v. Smith, supra /161 S.W.2d 520 (Tex. Civ. App. 1942, error ref. w.o. m.)7, and authorities therein cited, it is

our opinion that said provision of the
Dallas County Road Law, quoted in your
letter, allowing traveling expenses to
the County Judge, County Auditor and
County Commissioners for traveling
expenses on official business generally,
is not a road law, and is unconstitu-
tional as a special or local law at-
tempting to regulate the affairs of a
county where a general law could be made
applicable." (Emphasis added throughout.)

Therefore, we are of the opinion that Sec-
tion 4 is valid and constitutional with the exception
of that portion declared unconstitutional in the a-
bove mentioned opinion.

Section 5 authorizes the Commissioners'
Court to employ special counsel "to advise the Court
or the Commissioners thereof in special matters where-
in the services of said counsel may be required and
also in special cases to conduct the litigation of
the County in which the interests of said County may
be involved." The employment of counsel is not lim-
ited to matters pertaining to the construction and
maintenance of roads. We are of the opinion that
this section violates Section 56 of Article III and
is therefore unconstitutional.

Section 7 makes it the duty of the County
Auditor of Dallas County to audit expenditures from
the County Road and Bridge Fund, road district funds,
or "any other funds, special, general, or bond funds
now on hand or hereafter held by said County." It
is possible that this section, or at least the quoted
phrase, is invalid for the same reason that Section
5 is invalid. However, we see no need for determin-
ing this question at this time in view of the fact
that it appears to be in harmony rather than in con-
flict with the powers of the County Auditor under
general laws relating to his office.

Section 11 authorizes the appointment of
a "Purchasing Agent" for the county and provides
that all county purchases "of every kind and char-
acter" shall be made by the purchasing agent. This
section also prescribes the manner in which con-
tracts for the purchase of supplies and equipment
"of any kind or character" are to be made. Inasmuch

as its provisions are not limited to purchases incidental to the maintenance of roads, we are of the opinion that this section violates Article III, Section 56 of the Constitution. Miller v. El Paso County, supra; Oakley v. Kent, 181 S.W.2d 919 (Tex. Civ. App. 1944).

Section 12 relates to the use of convict labor in Dallas County. It is not limited to labor upon the public roads. Since convict labor may be utilized for other purposes (Art. 794, V. C.C.P.), the provisions of Section 12 attempt to regulate matters in addition to the maintenance of roads. We think this section violates Section 56 of Article III of the Constitution.

Section 19 makes it unlawful for a member of the Commissioners' Court or any county official to become financially interested in any contract for Dallas County road work or for the purchase or sale of materials or supplies for the county in connection with roads. The penalty prescribed is a fine of not less than $500 nor more than $1000, or imprisonment in the county jail for not more than one year, or both fine and imprisonment. Article 363, V.P.C., defines an identical offense with respect to such contracts and prescribes a penalty of not less than $50 nor more than $500.

In Ex parte Sizemore, 8 S.W.2d 134 (Tex. Crim. 1928), the court held that a provision in a local road law which allowed a credit of fifty cents a day for convict labor on the public roads was unconstitutional, since it was at variance with the general statute allowing a credit of $3.00 a day. The court there laid down this general rule:

> "A law which makes different punishments follow the same identical criminal acts in the different political subdivisions of Texas violates both our state and Federal Constitutions. It fails to accord equal rights and equal protection of the law, and a conviction under it is not in due course of the 'law of the land.'"

Also see Ex parte Carson, 159 S.W.2d 126, 129 (Tex. Crim. 1942). The Sizemore case arose out of a conviction for an offense denounced by the Penal Code

rather than by a local road law, but we think the same principle is applicable here. Therefore, that portion of Section 19 which conflicts with the general law on the same offense is unconstitutional.

Section 20 prohibits the dumping or depositing of garbage or refuse upon the public roads and highways of Dallas County and prescribes a fine of not more than $200 as the penalty. We think this provision is likewise unconstitutional insofar as it conflicts with the general law, Article 696a, V.P.C., which prescribes a penalty of a fine not less than $10 nor more than $200 for the same offense. In Ex parte Sizemore and Ex parte Carson, supra, the local law prescribed a more onerous penalty than the general law, whereas the penalty here is the less onerous since it does not prescribe a minimum fine. However, in State v. Fowler, 193 N.C. 290, 136 S.E. 709 (1927), a local law which imposed a fine only, while a statute applicable to the whole State imposed a fine or imprisonment, was held to be unconstitutional under both the Federal and State Constitutions, as a denial of equal protection of the laws.

Section 20 also makes it an offense for any person to permit sewage from his premises to drain upon the public roads and highways. We have been unable to find a general statute defining a similar offense. While earlier opinions of the Court of Criminal Appeals cited in Ex parte Sizemore had suggested that a new offense applicable in one locality only could be created in a local road law, we think the opinion in Ex parte Sizemore casts doubt upon the correctness of these former holdings. However, in the absence of an express decision on this question, we are inclined to hold this portion of Section 20 valid as being within the scope of Section 9 of Article VIII.

The holding in the Sizemore case also raises a question of the validity of Section 10, which makes it an offense for any person to fail to pay to the county treasurer within five days of its receipt money derived from the sale of property or the use of machinery and equipment of the county. However, we think Section 10 must be held invalid

for another reason. This section extends to the "sale of property and material ordered sold by the Commissioners Court and from the use and rental of machinery and equipment owned by the County," and provides that the money shall be placed to the credit of the Road and Bridge Fund. It includes all sales and all rentals, regardless of whether the property was purchased out of the Road and Bridge Fund or was used in connection with the maintenance of roads. It therefore transcends the bounds of a road law and is invalid under Section 56 of Article III as an attempt to regulate county affairs by local law.

Section 21 provides that all fines for any violations of any of the provisions of the act and all moneys collected by virtue of any contract executed under the provisions of the act shall be applied to the Road and Bridge Fund. We think the general purpose of this section comes within the purview of a local road law and is constitutional.

In your sixth question you ask whether the Legislature may single out Dallas County in Sections 22 and 24 and make the provisions of this act as constituted apply solely to that county to the exclusion of all others. We think the validity of these sections rests on the same basis as the validity of other sections pertaining to the maintenance of roads. Since the Legislature has the power to enact local legislation on this subject, it may include in the act a definition of the meaning to be given the terms used, so long as the definitions do not extend the provisions of other sections beyond the limits permitted by Article VIII, Section 9 of the Constitution. We do not find any objectionable provision in Section 22 of the act. Likewise, since the Legislature could enact a local road law for Dallas County, it could also provide the extent to which the local road law should control over other statutes. We are of the opinion that Section 24 is valid.

You ask whether there is sufficient basis for the remainder of the act to stand in the event certain sections of the act are unconstitutional. The answer to this question depends upon whether the unconstitutional portions can be severed from the

valid portions without materially affecting the main purpose of the legislation.

Section 25 of the Act provides:

"If any section, subdivision, paragraph, sentence, clause, or word of this Act be held to be unconstitutional the remaining portions of same shall, nevertheless, be valid, and it is declared that such remaining portions would have been included in this Act though the unconstitutional portion had been omitted."

In 2 Sutherland, Statutory Construction (3rd ed. 1943) 178-179, Sec. 2404, it is said:

"In determining separability, legislative intent governs, but intent that the act be enforced in so far as valid is not the the sole consideration. If the legislature so intended, the valid parts of the act will be upheld 'unless all the provisions are connected in subject matter, dependent on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed the legislature would have passed the one without the other.' To be capable of separate enforcement, the valid portion of an enactment must be independent of the invalid portion and must form a complete act within itself. The law enforced after separation must be reasonable in the light of the act as originally drafted. The test is whether or not the legislature would have passed the statute had it been presented with the invalid features removed."

Also see City of Taylor v. Taylor Bedding Mfg. Co., 215 S.W.2d 215 (Tex. Civ. App. 1948, error ref.); Christopher v. City of El Paso, 98 S.W.2d 394 (Tex. Civ. App. 1936, error dism.); Sharber v. Florence, 131 Tex. 341, 115 S.W.2d 604 (1938); Nichols v. Park, 119 S.W.2d 1066 (Tex. Civ. App. 1938); Daniel v. Tyrrell & Garth Inv. Co., 127 Tex. 213, 93 S.W.2d 372 (1936).

The Dallas County Road Law validly authorizes the Commissioners' Court to adopt an over-all plan or system for the construction and maintenance of county roads and outlines the method for acquiring real property necessary thereto. It authorizes the employment of a county engineer who is to be in direct charge of road maintenance. It regulates the manner of making contracts for the construction and maintenance of the roads and for the purchase of necessary materials and supplies. While we have found the bond provisions to be unconstitutional to the extent that they purport to authorize road districts to issue bonds for road and bridge purposes under Section 9 of Article VIII, the county may issue road bonds under this law. Also, the county or any road district therein may issue bonds for road purposes under the general laws. Various other provisions of the act are also valid. We think the valid provisions, standing alone, form a complete and enforceable piece of legislation, and we believe that the general legislative purpose of providing "a more efficient road system for Dallas County" may be given effect after the unconstitutional provisions have been severed from the act. This is in accord with the legislative intent declared in Section 25.

## SUMMARY

Those provisions of the Dallas County Road Law (House Bill 961, Acts 47th Leg., R.S. 1941, ch. 458, p. 729, as amended) authorizing the Commissioners' Court to adopt a system for the construction and maintenance of county roads (Section 1); providing for the appointement of a county engineer and prescribing his duties, and authorizing the purchase of automobiles for use of the county commissioners in the construction of roads (Section 4); relating to acquisition of rights of way for roads by purchase or condemnation (Section 6); requiring the draining of certain ditches and borrow pits which affect roads (Section 8); abolishing road overseers and payment of road taxes by labor and requiring road tax money to be placed in the County Road and Bridge Fund (Section 9); authorizing the issuance of

bonds and regulating the handling of moneys received therefrom, insofar as they pertain to bonds issued by the county for road and bridge purposes (Sections 13-17); regulating the manner of awarding contracts for road improvements (Section 18); providing for the application of certain moneys to the Road and Bridge Fund (Section 21); and authorizing the creation of a county planning board and conferring upon the Commissioners' Court certain authority over subdivision of territory outside the jurisdiction of cities and towns (Section 25a) were validly enacted under Section 9, Article VIII, Constitution of Texas, authorizing the passage of local laws for the mainte-nanceof public roads and highways.

Those provisions fixing the compensation of the county commissioners (Section 2); requiring the appointment of standing committees composed of members of the Commissioners' Court to supervise the various departments of the county's affairs (Section 3); authorizing traveling expenses for certain county officials (Section 4); authorizing the employment of special counsel by the Commissioners' Court (Section 5); requiring the deposit of moneys derived from the sale or rental of county property within five days after its receipt (Section 10); authorizing the appointment of a purchasing agent to handle all county purchases and prescribing the manner of making contracts for all county supplies (Section 11); and regulating the use of convict labor (Section 12) are in violation of Section 56, Article III, Constitution of Texas, prohibiting the passage of certain local or special laws. Sections 19 and 20, prescribing certain offenses and the penalty therefor, are invalid insofar as they conflict with the general law.

The valid portions of the Dallas County Road Law, standing alone, form a complete and enforceable piece of legislation, and the general legislative

purpose of providing "a more efficient road system for Dallas County" may be effected after the unconstitutional provisions have been severed from the act.

APPROVED:                           Yours very truly,

J. C. Davis, Jr.                    PRICE DANIEL
County Affairs Division             Attorney General

Everett Hutchinson
Executive Assistant

Charles D. Mathews                  Burnell Waldrep
First Assistant

                                    Mary K. Wall

                                    Jesse P. Luton, Jr.
                                    Assistants

BW:MKW:JPL:awo